4

VILLAGE OF LAKE VILLA, A MUNICIPAL CORPORATION, Claimant,
vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 11, 1954.*

BERNARD J. JURON, Attorney for Claimant.

LATHAM CASTLE, Attorney General; LAWRENCE W. RYAN, Assistant Attorney General, for Respondent.

WHAM, J.

The claim in this case by the Village of Lake Villa is for damages in the amount of $520.65. It is alleged that respondent's agents and servants negligently operated a bulldozer into and against a fire water hydrant, owned by the Village of Lake Villa, while engaged in clearing snow from the state highway within the Village limits.

The evidence reflects that on December 21, 1951, a severe snow storm occurred in the vicinity of Lake Villa, resulting in all highways being closed and necessitating snow removal operations. Cedar Avenue in the Village of Lake Villa is on Illinois Route No. 132, and is a part of the system of state highways; and, as such, is under the jurisdiction of the Department of Public Works and Buildings of the State of Illinois for maintenance. Snow and ice removal are a part of the maintenance operations.

Because of the heavy snow fall, it became necessary for the Division of Highways to procure privately owned trucks, bulldozers and tractors to supplement its own snow removal equipment in clearing the highways. A bulldozer and operator were procured to perform snow

clearing operations from Richard Jenkins and Ray Boller, doing business as Jenkins and Boller, under an oral agreement, wherein the Division of Highways reserved the right to choose the location and manner of operations.

The operations of this particular bulldozer during the afternoon of December 24, 1951 consisted of pushing drifted snow from the main traveled way onto the street shoulder of Cedar Avenue in the Village of Lake Villa. The snow upon the shoulders at the time of the snow clearing operations was, according to the evidence, from one to two feet in depth. The Departmental Report stated that the snow was of sufficient depth to completely cover the fire hydrants on the shoulder.

The evidence established that the Village fire hydrants in the area were approximately 26 to 30 inches in height above the ground, and were located 12 to 15 feet from the edge of the pavement.

While engaged in pushing the snow from the highway, the bulldozer struck a fire hydrant, breaking the same, and necessitating the installation of a new hydrant. This installation and necessary repairs were performed by the Inland Lakes Sewer and Water Company, who submitted their bill for such services in the amount of $536.40, which amount Mr. Michael W. Reimers, operator of the Inland Lakes Sewer and Water Company, testified was paid by the Village Board.

There were no eye witnesses offered by either claimant or respondent to the happening of the accident. The respondent, however, in its Departmental Report filed herein, admitted that the hydrant was struck and broken by the Jenkins and Boller bulldozer, while it was engaged in pushing snow from the highway.

The evidence, presented in this case, leaves much to be desired from the standpoint of presenting either a claim or a defense.

It seems to us, however, that the reasonable inference to be drawn from all the facts and circumstances in evidence is that the bulldozer operator was negligent. His negligence consisted of either failing to observe the fire hydrant, or, if such was not visible by reason of snow, failing to make a proper investigation to ascertain whether there were fire hydrants or other hidden installations in the path of the snow clearing operations. Obviously, if such investigation had been made, the location of the fire hydrant would have been discovered, and the damage avoided.

From the evidence, it appears that the operator of the bulldozer was acting as an agent of respondent, and was in the course of his employment, when the damage occurred. Therefore, respondent is, under the doctrine of respondeat superior, bound by the negligence of the operator.

It is noted that there is a variance between the repair bill set forth in the verified complaint, and the repair bill offered in evidence. It is noted that the bill offered in evidence contains a duplication, undoubtedly unintentional, of $15.75, an item for the wages of a laborer at $2.25 for seven hours. Inasmuch as the amount claimed in the complaint is $520.65, being $15.75 less than the bill offered in evidence, and, since the complaint has never been amended to correspond with the proof, we will allow the claim in the amount of $520.65.